Willie Ray **LEE**, Appellant (Defendant Below),

v.

**STATE** of Indiana, Appellee (Plaintiff Below).

No. 21S00–9612–CR–00800.

Supreme Court of Indiana.

Dec. 19, 1997.

Rehearing Denied March 30, 1998.

Michael Gene Worden, Indianapolis, for Appellant.

Jeffrey A. Modisett, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellee.

SHEPARD, Chief Justice.

A jury found Willie Ray Lee guilty of dealing in cocaine within 1000 feet of a school, a class A felony, Ind.Code Ann. § 35–48–4–1(b)(3)(B) (West Supp.1997), and also found him to be a habitual offender, Ind. Code Ann. § 35–50–2–8 (West Supp.1997). The trial court found aggravating circumstances and sentenced him to forty-four years, and added thirty years for his status as a habitual offender.

In this direct appeal, Lee raises five issues:

(1) Whether evidence of other crimes was properly admitted under Indiana Rule of Evidence 404(b);

(2) Whether a proper chain of custody was established to support the admission of a baggie of cocaine passed from Lee to an informant to an officer;

(3) Whether the jury was properly instructed on reasonable doubt during the habitual offender proceeding;

(4) Whether Lee's sentence was properly enhanced; and

(5) Whether the trial court properly upheld the State's peremptory strike of

the only prospective juror who was a member of Lee's race.

We conclude that the trial court did not err. Accordingly, we affirm.

### Facts

On May 31, 1996, James Napier contacted Detective Ted McQuinley of the Fayette County Sheriff's Department because he believed that McQuinley had a cocaine case against him. In an effort to help himself, Napier offered to assist McQuinley to buy cocaine "in an undercover capacity." (R. at 191.) McQuinley brought in Richmond Police Officer Michael Wamsley to work undercover with Napier.

Later that same day, Wamsley accompanied Napier in Napier's vehicle in an attempt to buy some cocaine. While they were driving around Connersville looking for Lee, whom Napier believed was a drug dealer, Napier presented Wamsley with a piece of crack cocaine which he claimed was sent by Lee as a sample. They subsequently encountered Lee, who instructed them to meet him in the alley behind his residence, which was within 1000 feet of a school. Wamsley contacted McQuinley and State Trooper Ron Shoemaker to maintain surveillance of the encounter.

Napier backed the car into the alley, where two other men were already waiting for Lee. The two men pulled into the alley and parked beside Napier's car, approximately two to three feet away. One of the two men walked up to Lee's car, had a conversation with him, received a plastic baggie, handed Lee money in exchange, and left. Napier then exited his vehicle and stood between the two cars, telling Lee that Wamsley wanted to buy a quarter ounce of crack cocaine. After Lee responded, Napier told Wamsley that Lee had only one gram left. Lee then handed Napier a plastic baggie containing crack cocaine. Napier held the baggie between his thumb and forefinger for approximately five seconds before giving it to Wamsley, who had exited the vehicle.

Wamsley testified that he never lost sight of the baggie after Lee handed it to Napier.

Wamsley then spoke with Lee about obtaining more. Lee said he was out of crack cocaine, but would return in two to two and a half hours with three or four ounces of powdered cocaine. They arranged a code for Lee to enter into Wamsley's pager when he returned with the drugs, and also agreed on a price. Wamsley then paid Lee $80 for the gram of crack cocaine he had received. Lee was subsequently charged and convicted of dealing in cocaine within 1000 feet of a school.

### I. Evidence of Other Crimes

■■■■ Appellant claims the trial court improperly admitted evidence of uncharged misconduct under Indiana Rule of Evidence 404(b). Specifically, he says it was error to allow Officer Wamsley to testify, over Lee's objection, about the apparent drug transaction between Lee and the two men who were waiting in the alley by his home when Napier and Wamsley arrived. He contends the State did not provide notice of its intention to introduce this prior "bad acts" evidence at trial.[1] Additionally, Lee argues that such evidence was irrelevant and improperly prejudiced him by implying to the jury that he had a propensity to deal in controlled substances.

Our evidentiary rule governing this issue provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause

---

1. Although Lee made a sufficiently clear pro se motion requesting pre-trial notice of evidence of prior bad acts the State intended to use, he did not object to the admission of the evidence on these grounds at trial. He therefore may not argue it on appeal. *See Abdul–Musawwir v. State,* 674 N.E.2d 972, 975 (Ind.Ct.App.1996), *trans. denied.*

shown, of the general nature of any such evidence it intends to introduce at trial. Ind.Evidence Rule 404(b).

We review trial court rulings admitting or excluding evidence under an abuse of discretion standard. *Barnes v. State,* 634 N.E.2d 46 (Ind.1994). Rule 404(b) was designed to assure that "the State, relying upon evidence of uncharged misconduct, may not punish a person for his character." *Wickizer v. State,* 626 N.E.2d 795, 797 (Ind.1993) (citing *Lannan v. State,* 600 N.E.2d 1334, 1338 (Ind.1992)). Although evidence of prior uncharged misconduct may not be admitted for the purpose of proving a defendant's bad character, it may be admissible for other purposes, such as "proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(b).

The rule does not bar, however, evidence of uncharged criminal acts that are "intrinsic" to the charged offense. *See, e.g., United States v. Williams,* 900 F.2d 823, 825 (5th Cir.1990); *cf. United States v. Barnes,* 49 F.3d 1144, 1149 (6th Cir.1995) ("When the other crimes or wrongs occurred at different times and under different circumstances from the offense charged, the deeds are termed 'extrinsic.'") The evidence in question here was intrinsic to the charged crime and thus not barred by Rule 404(b).

## II. Chain of Custody

Appellant contends the trial court improperly admitted into evidence Exhibit 1, the baggie of cocaine which Napier passed from Lee to Officer Wamsley, because the State did not establish a proper chain of custody linking it to Lee. Although he concedes the State established a proper chain of custody after the cocaine was received by Officer Wamsley, he suggests that the State did not negate the possibility that the cocaine may have come from Napier rather than from him.

To establish a proper chain of custody for physical evidence, the State must provide reasonable assurances that an exhibit which has passed through various hands has remained undisturbed. *Cliver v. State,* 666 N.E.2d 59, 63 (Ind.1996) (citing *Burris v. State,* 465 N.E.2d 171, 185 (Ind.1984), *cert. denied,* 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809 (1985)); *Bell v. State,* 610 N.E.2d 229, 233 (Ind.1993) (citing *Kennedy v. State,* 578 N.E.2d 633 (Ind.1991), *cert. denied,* 503 U.S. 921, 112 S.Ct. 1299, 117 L.Ed.2d 521 (1992)). In providing such assurances, the State need not negate every remote possibility of tampering. *Cliver,* 666 N.E.2d at 63 (citing *Starks v. State,* 517 N.E.2d 46, 53 (Ind.1987)). It is sufficient if the State presents evidence which " 'strongly suggests' the exact whereabouts of the evidence at all times." *Bell,* 610 N.E.2d at 233. Once the State has presented such evidence, "[a]ny gaps in the chain of custody would go to the weight of the evidence and not to the admissibility of the evidence." *Id.*

A proper chain of custody can be established through an officer's identification of the evidence and testimony that he observed the exchange in its entirety with an unobstructed view. *Collins v. State,* 645 N.E.2d 1089 (Ind.Ct.App.1995). Here, Officer Wamsley identified the evidence as being like the baggie which Napier handed him and testified that he observed the exchange of cocaine from a distance of five or six feet from Lee and two to three feet from Napier; that he never lost sight of the cocaine from the time Lee handed it to Napier and Napier handed it to him; and that the baggie was only in Napier's possession for five or six seconds before he gave it to Wamsley. Such testimony provides reasonable assurances that the evidence has remained in an undisturbed condition, and suggests the exact whereabouts of the evidence at all times.

Lee has not established that the State laid an inadequate foundation for the admission of Exhibit 1.

## III. Reasonable Doubt Instruction

Appellant argues that the "reasonable doubt" instruction given during the habitual offender phase of the proceedings constitutes fundamental error and requires reversal of the jury's habitual offender finding. Because Lee did not object to the instruction at trial, appellate review is unavailable, Ind.Criminal Rule 8(B), unless the

error is deemed to be fundamental. *Tobias v. State*, 666 N.E.2d 68 (Ind.1996). It was not.

## IV. Enhanced Sentence

Lee also claims the trial court used one improper aggravating circumstance in sentencing him. Because the court based the enhanced sentence on three additional valid aggravating factors, we see no grounds for relief.

The crime of dealing in cocaine within 1000 feet of a school is a class A felony, Ind.Code Ann. § 35–48–4–1(b)(3)(B) (West Supp.1997). It carries a presumptive thirty-year sentence, which may be enhanced by as many as twenty years due to aggravating circumstances, Ind.Code Ann. § 35–50–2–4 (West Supp.1997). In this case, the trial judge found the following aggravating factors and enhanced the presumptive sentence by fourteen years: (1) Lee has a history of criminal and delinquent acts; (2) the crime in the present case occurred after Lee was arrested and had agreed to plead guilty to another class A felony in Marion County; (3) the chances of Lee committing another crime are great; and (4) the imposition of a reduced or suspended sentence would depreciate the seriousness of the crime. (R. at 409–10.) Without challenging the first three, Lee claims that the fourth factor was improperly used as an aggravator because the trial judge did not consider imposing less than the presumptive sentence.

We agree that the fourth factor may be used as an aggravator only when the trial court is considering imposing a sentence of shorter duration than the presumptive sentence. *See Penick v. State*, 659 N.E.2d 484 (Ind.1995); *Widener v. State*, 659 N.E.2d 529 (Ind.1995). However, "[d]espite a trial court's use of an improper aggravating circumstance to enhance a sentence, this Court will affirm if the other aggravating circumstances are adequate to support the sentence imposed." *Scheckel v. State*, 620 N.E.2d 681, 684 (Ind.1993) (citing *Owens v. State*, 544 N.E.2d 1375, 1378 (Ind.1989)). In the present case, the other three aggravating factors considered by the trial judge support enhancement of the presumptive sentence.

## V. Peremptory Strike

Finally, Lee claims that the trial court erred when it allowed the State to exercise a peremptory challenge to the only prospective juror who was a member of his race.

A peremptory strike is unconstitutional when it is used to exclude a potential juror from service solely on the basis of his or her race or gender. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Williams v. State*, 669 N.E.2d 1372 (Ind.1996). A criminal defendant seeking to establish a prima facie case of racial discrimination must show that "(1) the prosecutor has exercised peremptory challenges to remove members of a cognizable racial group from the venire; and (2) the facts and any other relevant circumstances of the defendant's case raise an inference that the prosecutor used that practice to exclude venirepersons from the jury due to their race." *Bradley v. State*, 649 N.E.2d 100, 105 (Ind. 1995) (footnote omitted) (citing *Batson*, 476 U.S. at 96, 106 S.Ct. at 1722–23).

Once the defendant has established a prima facie case, "the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation. . . . If a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination." *Purkett v. Elem*, 514 U.S. 765, 767, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995). Although the State must provide a race-neutral reason for the strike after the defendant has established a prima facie case of discrimination, the U.S. Supreme Court has emphasized that "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Id.* at 768, 115 S.Ct. at 1771.

In this case, the trial judge conducted a hearing after Lee objected to the State's peremptory strike. The State offered the following reasons for striking the potential juror: his brother had been convicted in a drug case and was imprisoned, he had a lawsuit pending against the federal govern-

ment which he did not wish to talk about, he stated that he preferred not to sit in judgment of others, he expressed concern about possible financial burden, he indicated that he may have a schedule conflict with the trial, and he indicated that he or a member of his immediate family had been a crime victim. (S.R. at 178.) Although it was revealed later that neither the venireperson nor any member of his family had been a crime victim, it was also revealed that he had been represented by the judge in previous litigation.

 Lee argues that these reasons were merely pretextual and that the trial court erred in accepting them. However, "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Purkett,* 514 U.S. at 768, 115 S.Ct. at 1771 (quoting *Hernandez v. New York,* 500 U.S. 352, 360, 111 S.Ct. 1859, 1866–67, 114 L.Ed.2d 395 (1991)). The record illustrates that the State provided race-neutral reasons for the peremptory strike and that the trial court accepted them. The court's acceptance of these reasons constitutes a factual determination that the prosecution lacked discriminatory intent. *Kent v. State,* 675 N.E.2d 332, 340 (Ind.1996). As such, we will not set aside the decision of the trial court on the matter of discriminatory intent unless it is clearly erroneous. *Id.* We cannot conclude that the trial judge, who had the opportunity to observe this potential juror, was clearly erroneous in accepting the State's reasons for exercising the peremptory strike.

## VI. Conclusion

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, SELBY and BOEHM, JJ., concur.