**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JESSE R. POAG**
Newburgh, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JARON YANCEY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A05-1112-CR-695 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Kelli E. Fink, Magistrate
Cause No. 82C01-1108-FA-953

**August 8, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Jaron L. Yancey appeals his conviction for Dealing in Cocaine,[1] a class A felony. Specifically, Yancey maintains that his conviction should be set aside because the trial court improperly admitted cocaine that was seized during the search of a vehicle, following an "improperly prolonged investigatory stop." Yancey also claims that the trial court abused its discretion in admitting testimony of prior uncharged conduct that involved previous transactions with cocaine only hours before the instant offense occurred. Concluding that the cocaine was properly admitted into evidence and that Yancey's prior dealings in cocaine were also properly admitted in these circumstances, we affirm the judgment of the trial court.

FACTS

On August 6, 2011, at approximately 4:00 p.m., Yancey called an acquaintance, Casey Snyder, and asked her for a ride to the mall in Evansville. In exchange for the ride, Yancey gave Snyder .2 grams of cocaine. Snyder called Yancey on two other occasions that same evening to purchase additional cocaine, and each time Yancey brought her .2 grams of cocaine in exchange for twenty dollars.

At approximately 10:30 p.m., Yancey called Snyder and asked her to drive him to his house and then to another residence. In exchange for this task, Yancey gave Snyder .4 grams of cocaine. They were on their way to Yancey's house at around 11:30 p.m., and around that time, Evansville Police Officer Stacey Dutschke was dispatched to 1306 Ravenswood in response to a hit and run incident.

---

[1] Ind. Code § 35-48-4-1.

The victim reported that a dark colored PT Cruiser had been parked at the house across the street. When the PT Cruiser, which was being driven by a white female, backed out of the driveway, it hit the victim's vehicle that was parked in the street, and then drove off in a westbound direction. The victim's car, which was silver, had scratches and scrapes on it. As a result, Officer Dutschke radioed a description of the PT Cruiser and reported that silver paint transfer might be on it.

Evansville Police Officer Brian Watson was patrolling in the vicinity when he heard the radio reports about the hit and run and the description of the vehicle involved. Thus, Officer Watson started to drive around the area looking for a vehicle that matched that description. It was around 11:30 p.m. and traffic in the area was very light. Within moments, Officer Watson saw a white female driving a dark colored PT Cruiser on Washington Street that was missing a rear hubcap. Officer Watson knew from experience that hubcaps will often come off during an accident. When Officer Watson pulled behind the PT Cruiser, he noticed that it had damage and a scrape on the back. Suspecting that this was the vehicle involved in the hit and run incident, Officer Watson initiated a traffic stop.

It was determined that Snyder was driving the PT Cruiser and Yancey was the passenger. When Officer Watson had begun to initiate the stop, Yancey handed Snyder a small bag of suspected cocaine and told her to hide it in her vagina. Snyder refused and put the bag under her leg.

3

Snyder appeared nervous and upset when Officer Watson approached the car. Her hands were shaking so much that she had trouble handing Officer Watson her paperwork. Officer Watson then ordered both Yancey and Snyder from the vehicle. When Snyder got out of the car, she stuck the bag into her purse that had been sitting between the driver and passenger seats. Both Snyder and Yancey denied any involvement in the hit and run incident.

Based on Snyder's nervousness, Officer Watson asked her if there were any weapons or narcotics in the car, to which Snyder replied, "no." Tr. p. 89, 98. Officer Watson then obtained Snyder's consent to search the vehicle. During the course of the search, Officer Watson found the bag containing what appeared to be cocaine inside Snyder's purse. The substance in the bag field-tested positive for cocaine. Snyder told the officer that Yancey had handed her the bag before the stop and told her to put it in her pants. Subsequent laboratory testing confirmed that the substance was 27.5 grams of cocaine with a street value of $2800.

As a result of the incident, Yancey was charged with class A felony possession of cocaine with intent to deliver. The State also alleged that Yancey was a habitual substance offender. Prior to trial, Yancey filed a motion to suppress, claiming only that the initial stop of the vehicle was invalid. Following a hearing, the trial court denied the motion.

Prior to trial, the State had provided notice of its intent to present Indiana Evidence Rule 404(b) evidence at trial, and Yancey had apparently filed a motion in

4

limine to prohibit that evidence from being admitted at trial.[2] The trial court subsequently granted the motion in limine and prohibited any mention of Yancey's prior conviction for possession of marijuana, his prior conviction for possession of cocaine, the fact that Snyder had made previous purchases of cocaine from him over the course of several years, and the fact that Officer Watson knew that Yancey: 1) was on parole for battery with a weapon; 2) had prior handgun charges; and 3) was a drug dealer.

However, the trial court determined that the State could present evidence of the prior cocaine transactions between Snyder and Yancey on August 6, 2011, the date of the charged crime, because those matters were intrinsic to the charged offense. During the trial, Yancey did not object to Snyder's testimony regarding her dealings with Yancey on August 6. Yancey also did not object to any of the testimony regarding the cocaine that was found, nor did he object to two of the State's exhibits that consisted of the cocaine and the certificate of analysis.[3]

---

[2] The only written motion in limine from Yancey that is in the record involved his prior arrests. The hearing on the motions in limine, which was also held on October 18th and is referred to by the trial court, has not been transcribed. However, because the trial court refers to granting or denying the motion in limine with regard to the various Rule 404(b) evidence, it may be inferred that Yancey had filed a motion in limine during that hearing with regard to all of the Rule 404(b) evidence.

[3] The first time that the State moved to admit the cocaine into evidence, Yancey objected only on insufficient chain of custody grounds. Tr. p. 92. After witnesses involved in the chain of custody testified, Yancey affirmatively stated that he had "no objection" to the admission of the cocaine. Tr. p. 107. Yancey also stated that he had "no objection" to the admission of the certificate of analysis of the drugs and, as discussed above, did not object to the testimony regarding the exhibits prior to their admission into evidence.

Yancey was found guilty as charged on the dealing count and admitted to being a habitual substance offender. The trial court subsequently sentenced Yancey to an aggregate thirty-eight year term of imprisonment. Yancey now appeals.

DISCUSSION AND DECISION

I.  Admission of Cocaine

Yancey argues that the trial court erred in admitting the cocaine into evidence. As noted above, Yancey contends that the police officer conducted a prolonged stop of the vehicle and was improperly "fishing" for evidence of criminal activity. Appellant's Br. p. 9.

In addressing this contention, we initially observe that Yancey argued in his motion to suppress and at the pretrial hearing on the motion that the cocaine should not be admitted at trial because the initial stop of Snyder's vehicle was improper because the police officer lacked any reasonable suspicion to justify the stop. Appellant's App. p. 29-30; Supp. Tr. p. 25. However, as noted above, Yancey argues for the first time on appeal that the stop was too long and continued improperly even after the purpose of the stop had been satisfied. As a result, Yancey has waived the issue. See Small v. State, 736 N.E.2d 742, 747 (Ind. 2000) (holding that a defendant cannot object on one ground at trial and then raise a different claim of error on appeal). Moreover, Yancey did not make a contemporaneous objection at trial to the admission of the evidence. The issue is waived for this additional reason. See Brown v. State, 783 N.E.2d 1121, 1125-26 (Ind.

6

2003) (holding that the failure to make a contemporaneous objection waives any claim on appeal that the evidence was improperly admitted).

Waiver notwithstanding, we note that a police officer has the authority to briefly stop a person for investigative purposes if the officer has reasonable suspicion of criminal activity. Williams v. State, 754 N.E.2d 584, 587 (Ind. Ct. App. 2001) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). Reasonable suspicion exists where the facts known to the officer and the reasonable inferences therefrom would cause an ordinarily prudent person to believe that criminal activity has or is about to occur. Williams, 754 N.E.2d at 587. Although reasonable suspicion requires more than inchoate and unparticularized hunches, it is a less demanding standard than probable cause and requires a showing "considerably less" than proof of wrongdoing by a preponderance of the evidence. Cardwell v. State, 666 N.E.2d 420, 422 (Ind. Ct. App. 1996). Reasonable suspicion is a fluid concept and is determined on a case-by-case basis by looking at the totality of the circumstances. Person v. State, 764 N.E.2d 743, 748 (Ind. Ct. App. 2002).

Yancey concedes on appeal—and we agree—that Officer Watson had sufficient reasonable suspicion to initiate the traffic stop. It was reasonable to suspect that Snyder's vehicle was the same one that had been reported in the hit and run incident.

In accordance with Indiana Code section 9-26-1-3 and -8(b), the failure to stop after damaging a parked car is a crime. The vehicle matched the description of the vehicle, it had rear end damage consistent with the reported incident, and it was the only dark-colored PT Cruiser that Officer Watson saw. And Officer Watson spotted the

vehicle just several blocks away from the hit and run location only a few minutes after that incident was reported. Supp. Tr. p. 6-8,11-12, 14-16, 24; Tr. p. 86-87, 94-96.

There is also no indication that the stop was unreasonably prolonged as Yancey contends. Indeed, an investigative detention must last no longer than is necessary to effectuate the purpose of the stop, and the investigative methods employed should be the least intrusive means readily available to verify or dispel the officer's suspicion. Lockett v. State, 747 N.E.2d 539, 541-42 (Ind. 2001). Police officers may also, as a routine matter of course, order both drivers and passengers to exit a vehicle during a stop. Mitchell v. State, 745 N.E.2d 775, 780 (Ind. 2001). An officer can ask the driver whether there are any weapons or drugs in a vehicle. State v. Washington, 898 N.E.2d 1200,1202-05 (Ind. 2008). And "questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention." United States v. Childs, 277 F.3d 947, 953-54 (7th Cir. 2002) (en banc) (holding that questioning during lawful detention need not be related to the reason for that detention). Questions that do not extend the length of the detention, or that only briefly extend it, do not make the custody itself unreasonable. Id. at 949.

In this case, Yancey contends that the justification for the stop ceased when he and Snyder denied being involved in the hit and run incident. Thus, Yancey argues that Officer Watson had no grounds to detain them any further at that point. Notwithstanding this claim, we cannot say that the reasonable suspicion dissipated merely because Yancey denied committing the crime. The investigation into the hit and run was still ongoing,

8

and Officer Watson reasonably could detain Snyder during this time. See Lockett, 747 N.E.2d at 541-42 (holding that investigative methods that are employed should be the least intrusive means readily available to verify or dispel the police officer's suspicion).

The testimony shows that Officer Watson obtained Snyder's paperwork, ordered both individuals to exit the vehicle, spoke to them both separately and briefly to ask whether they were involved in the hit and run, and then asked Snyder whether she had contraband in the car and whether she would consent to a search. Supp. Tr. p. 16-18, 23; Tr. p. 87-89. Nothing in the record suggests that Yancey and Snyder had been detained for very long before the consent to search was obtained.

Moreover, the factors discussed above all demonstrate the likelihood that this was the vehicle involved in the hit and run incident. Again, Officer Watson was not obligated to simply accept Yancey and Snyder's denial of committing the offense and ending the detention. And inquiring about the presence of any contraband helped insure Officer Watson's safety and security while he was briefly investigating the vehicle's involvement in the hit and run. The question about the contraband in this case was especially justified given Snyder's extreme nervousness, which could cause a reasonable officer to have some fear for his safety. Therefore, Officer Watson could still detain Snyder for a brief period while continuing to investigate the hit and run incident.

The record shows that Snyder subsequently voluntarily consented to a search of her vehicle. Tr. p. 46-47, 89, 98. And once she consented to that search, the police no longer needed reasonable suspicion to detain the vehicle.

9

For all of these reasons, we conclude that the trial court properly admitted the cocaine into evidence that was seized during that search.

## II. Admission of Prior Cocaine Dealings and Deliveries

Yancey next contends that the trial court erred in admitting evidence of prior uncharged drug transactions and interactions that he had with Snyder. Yancey argues that admitting evidence that Yancey had delivered cocaine to Snyder four separate times within eight hours of the charged offense amounted to an abuse of the trial court's discretion because the prejudice in admitting such evidence outweighed its probative value.

The decision to admit or exclude evidence lies within the trial court's sound discretion and is afforded great deference on appeal. Bacher v. State, 686 N.E.2d 791, 793 (Ind. 1997). We will not reverse that decision absent a manifest abuse of discretion resulting in the denial of a fair trial. Edwards v. State, 724 N.E.2d 616, 620 (Ind. Ct. App. 2000). A trial court's evidentiary rulings may be affirmed on any basis apparent in the record. Craun v. State, 762 N.E.2d 230, 236 (Ind. Ct. App. 2002).

In this case, Yancey has waived the issue because he did not object when this testimony was elicited from Snyder. Tr. p. 35-43. Although Yancey filed a motion in limine, the ruling on that motion is not final governing the admissibility of evidence and does not preserve an evidentiary error for appeal. Rather, the party must reassert the objection contemporaneously when the evidence is offered to allow the trial court to make a final ruling on admissibility in the proper context. Swaynie v. State, 762 N.E.2d

10

112, 113 (Ind. 2002). The failure to make a contemporaneous objection waives any claim on appeal that the evidence was improperly admitted. Brown, 783 N.E.2d at 1125-26.

We further note that Yancey makes no attempt to argue that the admission of this evidence constitutes fundamental error. Therefore, he has waived review of any such argument as well. Regardless, Yancey cannot satisfy the fundamental error standard because this exception is extremely narrow. Boesch v. State, 778 N.E.2d 1276, 1279 (Ind. 2002). Fundamental error occurs only when the error "constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." Id. In other words, to qualify as fundamental error, the error must be so prejudicial to the rights of the defendant that renders a fair trial impossible. Clay v. State, 766 N.E.2d 33, 36 (Ind. Ct. App. 2002).

In our view, the trial court's admission of this evidence did not constitute error at all, much less fundamental error. Relevant evidence, which is evidence having any tendency to make the existence of any fact of consequence more or less probable, is admissible. See Evid.R. 401, 402. However, relevant evidence should nevertheless be excluded if the trial court determines that the probative value of the evidence is substantially outweighed by its prejudicial effect, or if the evidence is offered only to prove the defendant's propensity to commit criminal offenses. Evid.R. 403, 404(b); see

11

also Garner v. State, 754 N.E.2d 984, 992 (Ind. Ct. App. 2001), summarily aff'd in relevant part, 777 N.E.2d 721, 723 n.4 (Ind. 2002).

Evidence of other bad acts is admissible if it is offered for purposes other than a propensity to commit crimes. See Evid.R. 404(b) (listing proper purposes such as motive, intent, preparation, knowledge, and identity). Additionally, Evidence Rule 404(b) does not bar evidence that is "intrinsic" to the charged act. Lee v. State, 689 N.E.2d 435, 439 (Ind. 1997). For instance, evidence that the defendant engaged in a drug deal with someone else minutes before he engaged in the charged deal was properly admitted and not barred by Evidence Rule 404(b). Id. at 438-39.

Here, the evidence in this case that Yancey possessed and was delivering cocaine to Snyder on a repeated basis just hours before the traffic stop was intrinsic to his continued possession of cocaine found in the vehicle during that stop. It completed the story to explain why Snyder was driving Yancey around that evening and why he was the one controlling the cocaine even though it was found in her purse. In essence, there was only one ongoing possession of cocaine throughout the late afternoon and evening. Put another way, the small amounts of cocaine that Yancey gave Snyder earlier were drawn from the larger amount that he still retained. The earlier incidents were not separate, prior bad acts but were all part of the same charged act.

Furthermore, regardless of whether it is deemed intrinsic, the evidence was offered for a purpose other than to show that Yancey has a propensity to commit criminal offenses. The State had to prove both that Yancey possessed the cocaine, which was

12

found in Snyder's purse, and that he had the intent to deliver it. Thus, the State had to establish non-exclusive constructive possession – that Yancey knew of the cocaine's presence and that he had the intent and capability to maintain control over it. See, e.g., Holmes v. State, 785 N.E.2d 658, 660-61 (Ind. 2003) (setting forth the showing for constructive possession).

Evidence that Yancey possessed cocaine on numerous separate occasions during the eight hours preceding this traffic stop was highly relevant to establish that fact. More particularly, it was relevant to show his knowledge of the cocaine's presence and his intent to maintain control over this cocaine because it showed that Yancey—and not Snyder—was the person who was supplying cocaine that evening. This evidence established that Yancey possessed cocaine during the immediate preceding hours, which made it more likely than not that he was also the possessor of this cocaine or at least knew something about its presence. It was also, therefore, relevant to establish Yancey's identity as the owner of the cocaine and his opportunity to commit the crime.

In our view, this circumstance is analogous to that where the State presents evidence that the defendant had been previously seen in possession of a weapon similar to the one that was used in the charged crime. Those cases have established that such evidence does not violate the provisions of Evidence Rule 404(b). Rather, it shows the opportunity or access to the instrument of the crime. Dickens v. State, 754 N.E.2d 1, 4 (Ind. 2001). Similarly, in this case, the earlier incidents demonstrated Yancey's access to cocaine and his opportunity to commit the charged offense.

13

Finally, we cannot say that the probative value of this evidence was substantially outweighed by its purported prejudicial effect. The State presented strong evidence of Yancey's guilt and did not use this evidence to argue the "forbidden inference" that Yancey must have committed the instant offense because he was a bad person who had committed other crimes. In short, Yancey cannot establish that the admission of this evidence made it impossible for him to receive a fair trial. For all of these reasons, Yancey's claims fail.

The judgment of the trial court is affirmed.

ROBB, C.J. and BRADFORD, J., concur.