**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JULIE P. VERHEYE**
Mishawaka. Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| FOREST LAMAR, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1306-CR-208 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable John M. Marnocha, Judge
Cause No. 71D02-1209-FA-27

**February 20, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Forest Lamar, Jr., appeals his conviction and sentence for Class A felony attempted murder. We affirm.

**Issues**

Lamar raises three issues, which we restate as:

 I. whether fundamental error occurred by the admission of evidence concerning the murder of Dietrich Perkins;

 II. whether the evidence is sufficient to sustain Lamar's conviction; and

 III. whether the sentence is inappropriate in light of the nature of the offense and the character of the offender.

**Facts**

Dietrich Perkins was involved with selling and purchasing drugs in South Bend. On around November 14, 2011, Perkins got in a dispute with Lamar and Sylvester Garner over "shorting" them some money in a drug deal. Tr. p. 328. On November 18, 2011, Lamar, Garner, Freemond Jordan, and Bryant Hunt arranged to meet Perkins in an apartment parking lot to buy some drugs.

Lamar was armed with a Taurus .45 caliber handgun. Garner was armed with a Smith & Wesson .40 caliber handgun, Hunt was armed with a Taurus .40 caliber handgun, and Jordan was armed with a 9 mm handgun. Hunt drove to the parking lot in a Range Rover with Jordan in the passenger seat, and Lamar drove there in a Chevrolet Impala with Garner in the passenger seat. When they arrived at the parking lot, Garner got into the back seat of the Range Rover.

2

Turquoise Parahams, Perkins's girlfriend, went with Perkins to the meeting. Perkins was driving Parahams's vehicle, and Parahams was in the passenger seat. When they arrived, Perkins backed into a parking spot and got into the driver's side back seat of the Range Rover. The men got into an argument in the Range Rover, and Jordan shot Perkins. Perkins got out of the vehicle and fell on the ground, and Garner and/or Hunt then shot Perkins again.

Parahams heard the gunshots and ducked down in her car. The Range Rover started moving toward Parahams's vehicle, and shots were fired at her. Parahams "played dead," and the Range Rover started to drive away. Id. at 247. Parahams moved to the driver's seat and tried to drive away, but she hit the Range Rover. After Hunt drove the Range Rover away, Lamar stopped the Impala in front of Parahams's vehicle and fired more shots at her. When Lamar drove away, Parahams discovered that her vehicle was inoperable. She ran to a nearby cemetery and hid.

Lamar met the other men shortly after the shooting and told them that "somebody was in the car," meaning Parahams's vehicle, and that he shot at the vehicle. Id. at 362, 422. Lamar also said that Perkins was still alive and that he shot him. Lamar, Garner, and Hunt were eventually apprehended in Chicago. At the time of their arrest, several weapons, including a Taurus .45 caliber handgun, were recovered.

Crime scene technicians found thirteen impact holes and one strike mark on Parahams's vehicle. Three holes were in the hood, seven holes were in the windshield, three holes were on the passenger side of the vehicle, and one strike mark was on the passenger side. Forensic analysis showed that the Taurus .45 caliber handgun recovered

3

in Chicago fired two bullets that were recovered from Parahams's vehicle and that it could have been the weapon that fired another two bullets that were recovered from the vehicle.

The State charged Lamar with Class A felony attempted murder of Parahams. At the jury trial, Hunt and Garner testified against Lamar regarding the incident. The jury found Lamar guilty as charged, and the trial court sentenced him to forty years in the Department of Correction. Lamar now appeals.

**Analysis**

*I. Admission of Evidence*

Lamar argues that fundamental error occurred as a result of testimony from Hunt and Garner that Lamar admitted to shooting Perkins. Lamar concedes that he did not object to this testimony at trial. As a result, Lamar argues that the admission of the testimony constituted fundamental error.

The "[f]ailure to object at trial waives the issue for review unless fundamental error occurred." Treadway v. State, 924 N.E.2d 621, 633 (Ind. 2010). "The 'fundamental error' exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." Mathews v. State, 849 N.E.2d 578, 587 (Ind. 2006). "The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process." Brown v. State, 929 N.E.2d 204, 207 (Ind. 2010) (internal

4

quotation omitted). "This exception is available only in egregious circumstances." Id. (internal quotation omitted).

Garner testified that, after the shooting, Lamar said, "You know, the dude was still alive . . . [s]o I fired some more shots . . . ." Tr. pp. 362-63. Hunt testified that Lamar claimed to have shot Perkins too. Id. at 421. Lamar argues that the testimony concerning him shooting Perkins is evidence of an extrinsic bad act that is inadmissible under Indiana Evidence Rule 404(b).[1] At the time of Lamar's trial, Indiana Evidence Rule 404(b) provided:[2]

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for

---

[1] Lamar also mentions that the State did not file pretrial notice of its intention to use this evidence at the trial in violation of a local rule. Lamar does not contend that he raised this issue at trial, and he makes no argument that this failure resulted in fundamental error. Consequently, he has waived this issue. See Treadway, 924 N.E.2d at 633 (holding that the "[f]ailure to object at trial waives the issue for review unless fundamental error occurred").

[2] Indiana Evidence Rule 404(b) was amended effective January 1, 2014. The Rule now provides:

> (1)   Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2)   Permitted Uses; Notice in a Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:
>
>> (A)   provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and
>>
>> (B)   do so before trial--or during trial if the court, for good cause, excuses lack of pretrial notice.

other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

In assessing the admissibility of Rule 404(b) evidence, the court must determine whether the evidence is relevant to a matter at issue other than the defendant's propensity to commit the charged act and balance the probative value of the evidence against its prejudicial effect. Spencer v. State, 703 N.E.2d 1053, 1055-56 (Ind. 1999).

The State argues that Garner and Hunt's testimony did not violate Rule 404(b) because the evidence was intrinsic and showed motive for the shooting of Parahams's vehicle. Rule 404(b) "does not bar . . . evidence of uncharged criminal acts that are 'intrinsic' to the charged offense." Lee v. State, 689 N.E.2d 435, 439 (Ind. 1997). "Other acts are 'intrinsic' if they occur at the same time and under the same circumstances as the crimes charged." Wages v. State, 863 N.E.2d 408, 411 (Ind. Ct. App. 2007), trans. denied. "Evidence of happenings near in time and place that complete the story of the crime is admissible even if it tends to establish the commission of other crimes not included among those being prosecuted." Id. Although Lamar was not charged with the murder of Perkins, we agree with the State that the attempted murder of Parahams cannot be separated from the murder of Perkins. Evidence concerning the murder of Perkins completes the story of the attempted murder of Parahams. See, e.g., Lee, 689 N.E.2d at 439 (holding that evidence of an uncharged drug transaction was intrinsic to the charged crime and not barred by Rule 404(b)).

6

Additionally, "motive is 'always relevant' when proving a crime." Allen v. State, 925 N.E.2d 469, 477 (Ind. Ct. App. 2010) (quoting Camm v. State, 812 N.E.2d 1127, 1131 (Ind. Ct. App. 2004), trans. denied), trans. denied. "It is clear, however, that just because motive is 'always relevant,' this does not mean the State can introduce questionable character evidence simply by labeling it evidence of 'motive.'" Id. "If the State's claim of relevance to motive is too strained and remote to be reasonable, then the extrinsic act evidence is inadmissible." Id. Evidence concerning the murder of Perkins demonstrated the motive for shooting at Parahams, i.e., eliminating a witness to Perkins's murder. The evidence showed Lamar's intent in shooting at Parahams's vehicle.

Finally, we note that the trial court gave the jury a limiting instruction during the trial that Lamar was not charged with Perkins's murder, that the evidence merely gave "context" to the events, and that the evidence should not be considered "as proof that the defendant committed the offense with which he's charged." Tr. p. 243. During final instructions, the trial court gave the jury a similar admonishment. Id. at 692.

We conclude that evidence concerning the murder of Perkins was intrinsic to the offense at issue here. Further, the evidence provided motive for the shooting of Parahams's vehicle. The jury was specifically informed that Lamar was not charged with Perkins's murder and that it could not be considered as proof of the attempted murder of Parahams. Under these circumstances, we cannot say that Lamar was subject to fundamental error by the admission of Garner's and Hunt's testimony.

## II. Sufficiency of the Evidence

7

Lamar argues that the evidence is insufficient to sustain his conviction. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

To establish attempted murder, the State must prove beyond a reasonable doubt that: (1) the defendant acted with the specific intent to kill; and (2) the defendant engaged in conduct constituting a substantial step toward commission of the crime. Osborne v. State, 754 N.E.2d 916, 924 (Ind. 2001). According to Lamar, the evidence is insufficient because the testimony against him was incredibly dubious. Appellate courts may apply the "incredible dubiosity" rule to impinge upon a jury's function to judge the credibility of a witness. Love v. State, 761 N.E.2d 806, 810 (Ind. 2002).

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

Id. (internal citations omitted). The incredible dubiosity rule applies only where a sole witness's testimony is inherently improbable and there is a complete lack of circumstantial evidence. Here, both Garner and Hunt testified that Lamar was involved

8

in shooting at Parahams,[3] and there was circumstantial evidence that supported Garner and Hunt's testimony. Consequently, the incredible dubiosity rule is inapplicable here. Lamar's argument is merely a request to reweigh the evidence and judge the credibility of the witnesses, which we cannot do.

The State presented evidence that Lamar was involved in a dispute with Perkins over a drug deal. Lamar and the other men met with Perkins in the parking lot of an apartment complex. Perkins was shot and killed, and the men in the Range Rover shot at Parahams's vehicle. Lamar then stopped in front of her vehicle and also shot at it. Lamar was armed at the time with a Taurus .45 caliber handgun, which was recovered when he was arrested in Chicago.[4] Crime scene technicians found thirteen impact holes and one strike mark on Parahams's vehicle. Three holes were in the hood, seven holes were in the windshield, three holes were on the passenger side of the vehicle, and one strike mark was on the passenger side. Forensic analysis showed that the Taurus .45 caliber handgun fired two bullets that were recovered from Parahams's vehicle and that it could have been the weapon that fired another two bullets that were recovered from the vehicle.

Lamar also seems to argue that he did not intentionally shoot at Parahams with the specific intent to kill her. A conviction for attempted murder requires proof of a specific intent to kill. Henley v. State, 881 N.E.2d 639, 652 (Ind. 2008). Because intent is a

---

[3] Lamar claims that only Garner testified that Lamar admitted to shooting Parahams's vehicle. However, Hunt also testified that Lamar said, "he shot at the car, too." Tr. p. 422.

[4] Lamar argues that only Hunt testified that Lamar was armed with a Taurus .45 caliber handgun. However, Garner also testified that Lamar was in possession of that handgun. Tr. p. 337.

mental state, "intent to kill may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or serious injury." Id. Firing a gun in the direction of an individual is substantial evidence from which a jury may infer intent to kill. Id. The State presented evidence that the men in the Range Rover and Lamar shot at Parahams's vehicle. Parahams was seated in the passenger seat, and the bullet holes were focused on the hood, windshield, and passenger side of the vehicle. Lamar later met the other men at a garage and told them that "somebody was in the car," meaning Parahams's vehicle, and that he shot at the vehicle. Tr. pp. 362. This evidence is sufficient to show that Lamar acted with the specific intent to kill Parahams. The evidence is sufficient to sustain Lamar's conviction for attempted murder.

### III. Sentencing

Lamar argues that his forty-year sentence is inappropriate in light of the nature of the offense and the character of the offender. Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. When considering whether a sentence is inappropriate, we need not be "extremely" deferential to a trial court's sentencing decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). Still, we must give due consideration to that decision. Id. We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

10

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest— the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

The nature of the offense is that Lamar attempted to kill Parahams because she witnessed the murder of her boyfriend over a drug deal dispute. He fired multiple shots at her as she sat in her vehicle. Nothing about the nature of the offense warrants a reduction in Lamar's sentence.

As for the character of the offender, Lamar was eighteen years old at the time of this crime. He had accumulated a significant history of juvenile offenses, including a 2006 adjudication for disorderly conduct, a 2008 adjudication for criminal trespass, 2009 adjudications for resisting law enforcement and carrying a handgun without a license, and a 2011 adjudication for carrying a handgun without a license. Lamar also had numerous arrests that did not result in juvenile adjudications. He dropped out of high school, has had little history of employment, and has used marijuana daily since he was fourteen years old.

11

Lamar, however, argues that part of his forty-year sentence should be suspended because of his young age. Despite his young age, Lamar has had significant contacts with the criminal justice system and has been given many opportunities to change his behavior, which he has failed to do. Lamar also requests a partially suspended sentence because he has two young children. Lamar claims that "[t]he opportunity to be a part of their lives again before they reach adulthood . . . would serve as incentive for Lamar to redeem himself." Appellant's Br. p. 17. Regardless of the exact sentence imposed, Lamar will miss much of his children's childhoods because of his actions. Finally, he also argues that his moderate risk to reoffend classification indicates that a suspension of the sentence to the advisory sentence of thirty years would be appropriate. However, Lamar cites no authority, and likewise we are aware of none, that would require an advisory sentence for offenders with a moderate risk to reoffend.

Given Lamar's juvenile history, his failure to take advantage of prior leniency, and the seriousness of the current offense, we cannot say that the forty-year sentence is inappropriate in light of the nature of the offense and the character of the offender. We decline Lamar's request to suspend part of his sentence.

## Conclusion

The admission of Garner's and Hunt's testimony did not result in fundamental error, the evidence is sufficient to sustain Lamar's conviction, and his forty-year executed sentence is not inappropriate. We affirm.

Affirmed.

ROBB, J., and BROWN, J., concur.

12