**Cory Lamont COWAN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 53A04–0208–CR–412.**

Court of Appeals of Indiana.

March 5, 2003.

Kimberly A. Jackson, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy At-

torney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Cory Cowan appeals his conviction for Receiving Stolen Property,[1] a class D felony. Specifically, he maintains that: (1) Indiana Rules of Evidence 403 and 404 were violated because evidence of uncharged crimes was admitted at trial and was highly prejudicial to him; (2) the trial court erred in instructing the jury on accomplice liability because the evidence did not support the giving of such an instruction and was confusing; (3) the prosecutor committed misconduct during closing argument; and (4) the evidence was insufficient to support the conviction. Concluding that there was no error, we affirm Cowan's conviction.

### FACTS

The facts most favorable to the verdict are that on May 8, 2001, Julie Bowles and Lisa Harkness met Cowan and his roommate, Charles Hays, at a Bloomington bar. All four eventually went to Cowan's apartment, where they smoked cocaine. At one point, Cowan and Hays approached the girls about stealing some checkbooks or credit cards and using those to buy some merchandise for them in exchange for additional drugs.

Bowles and Harkness agreed, left the apartment and then drove to the PTS Electronics parking lot where they searched for an unlocked vehicle. The girls eventually discovered an unlocked truck and removed a checkbook that belonged to Julia Graham, a PTS employee. Bowles and Harkness then proceeded to a nearby Marsh grocery store where they purchased several items and received some

cash after forging Graham's name on a check. Thereafter, they returned to Cowan's apartment and gave the cash to Cowan and Hays. Cowan and Hays then prepared a list of items they wanted Bowles and Harkness to purchase for them using the stolen checks. Both girls then drove to a Wal–Mart where they again used stolen forged checks to purchase a number of items for Cowan and Hays as well as some clothing for themselves.

The next day, all four went to Bowles's residence in Bedford where they brought two other women into their plan. Bowles, Cowan, and Hays went to pick up Harkness's daughter from day care, whereupon they went to a sporting goods store and Bowles again purchased some items with a forged check. Bowles and Cowan then proceeded to a Finish Line athletic shoe store. Cowan tried on a number of shoes, selected the ones he wanted, and placed them on the checkout counter. Cowan then exited the store and waited outside for Bowles. Bowles again forged Graham's name on a stolen check to pay for the shoes. After leaving the store, the police stopped both Cowan and Bowles and directed them to sit at a table. Cowan assisted Bowles in hiding the checkbook under the table, where the police later found it.

Bowles admitted to the police that she forged the check, that Cowan knew about it, and acknowledged that most of the merchandise she had purchased was for him. As a result of the incident, Cowan was charged with one count of receiving stolen property, which were the shoes that had been "purchased" from the Finish Line. Bowles eventually told three versions of the events that occurred with regard to the spree. During an interview with the police immediately following the arrest, Bowles explained that she had found Gra-

---

1. Ind.Code § 35–43–4–2.

ham's checkbook in a parking lot. Bowles also stated that she was aware of only two checks that had been forged. Later in the interview, however, Bowles admitted that she stole Graham's checkbook from Graham's vehicle, but Bowles continued to deny any knowledge of other instances that forged checks or stolen credit cards were used to purchase merchandise at local businesses.

At trial, Bowles offered yet another version of the events in accordance with the terms of a plea agreement where she would avoid incarceration by testifying against Cowan. Specifically, she testified that Cowan and Hays orchestrated a scheme whereby Bowles and Harkness were directed to steal checkbooks and credit cards from two vehicles and to buy merchandise for Cowan and Hays at businesses with forged checks or stolen credit cards.

Prior to trial, Cowan filed a motion in limine to exclude any evidence regarding drug usage or transactions involving stolen checks other than the incident that had occurred at the Finish Line. The State argued that this evidence was relevant for purposes other than proving Cowan's propensity toward criminality, and the trial court denied the motion. At trial, Cowan raised a relevance objection when Bowles first testified about using cocaine at the apartment as well as her own use of xanax. Cowan made no other evidentiary objections to the testimony regarding drugs and the other forged check transactions and never raised an objection at trial that the evidence had been erroneously admitted. Over Cowan's objection, the trial court gave an instruction on accomplice liability regarding inducement and causing another to commit an offense. During closing arguments, Cowan did not raise any objection to the State's comments regarding the credibility of the State's witnesses. Fol-

lowing the conclusion of the trial on May 9, 2002, Cowan was found guilty as charged. He now appeals.

## DISCUSSION AND DECISION

### I. Evidence of Uncharged Crimes

■ Cowan first contends that the trial court erred in admitting highly prejudicial evidence of other crimes in violation of Ind. Evidence Rules 403 and 404. Specifically, Cowan maintains that the evidence of his drug use and crack-for-merchandise deal was not relevant to the receiving stolen property charge and was highly prejudicial. Cowan also asserts that evidence of prior bad acts by persons other than Cowan was irrelevant and prejudicial.

■ In resolving this issue, we note that it is within the sound discretion of the trial court to admit or exclude evidence. *Hardiman v. State*, 726 N.E.2d 1201, 1203 (Ind.2000). We will not reverse the trial court absent an abuse of that discretion. *Id.* Our supreme court has determined that a trial court abuses its discretion when its evidentiary ruling is clearly against the logic, facts and circumstances presented. *Id.*

Ind. Evidence Rule 404(b) provides that:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

■ The rationale behind Evid. R. 404(b) is that the jury is precluded from making the forbidden inference that the defendant had a criminal propensity and therefore engaged in the charged conduct. *Monegan v. State* 721 N.E.2d 243, 248 (Ind.1999). When a defendant objects to the admission of evidence on the grounds that it violates Evid. R. 404(b), we: (1) determine whether evidence of prior bad acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act; and (2) balance the probative value of such evidence against its prejudicial effect. *Id.* The supreme court has also determined that the provisions of Evid. R. 404(b) do not bar the admission of evidence of uncharged criminal acts that are "intrinsic" to the charged offense. *Lee v. State*, 689 N.E.2d 435, 439 (Ind.1997). "Intrinsic" refers to those offenses occurring at the same time and under the same circumstances as the crimes charged. *Id.*

Here, the evidence at trial showed that Cowan suggested that Bowles and Harkness use stolen checks or credit cards to obtain various merchandise for him in exchange for drugs. In complying with Cowan's request, it was established that the girls stole Graham's checkbook and wrote forged checks to obtain cash and various items. The scheme culminated in Bowles's use of a forged check to obtain the tennis shoes from the Finish Line for Cowan—the charge that the State ultimately brought against him.

The evidence of the other acts as well as the drug usage served as the basis for everything that followed the charged incident and was necessary to explain and understand that incident. In essence, the evidence presented at trial regarding the drug usage was relevant to Cowan's motive, and it was necessary to explain and understand the offense that had been charged. Thus, it can be said that the drug usage and other uncharged criminal acts were inextricably bound up with the forgery spree that culminated in the theft of the tennis shoes from the Finish Line. *See Lee*, 689 N.E.2d at 439.

Additionally, the evidence of the other forged checks passed by Bowles and Harkness at the other stores, as well as the theft of the checkbook, was relevant to show Cowan's knowledge that the property had been stolen, inasmuch as his knowledge was an essential element of the offense the State had to prove beyond a reasonable doubt in accordance with Indiana Code section 35–43–4–2. Specifically, the evidence demonstrated that it was Cowan who had suggested the forgery scheme and that he knew of Bowles's and Harkness's use of the forged checks to obtain goods at Marsh, Wal–Mart and the other sporting goods store. Tr. p. 180–92, 195–97, 262–72. That evidence was relevant to show that Cowan also knew that Bowles had used a forged check to obtain the Finish Line merchandise. Moreover, most of the evidence at issue pertained to the offenses and acts committed by Harkness and Bowles, and not by Cowan. Thus, Cowan has failed to show prejudice by evidence that it was the other witnesses had repeatedly passed stolen and forged checks.

We also note that Cowan's defense at trial was that Bowles and Harkness had simply concocted his involvement in their forgery spree after they were apprehended in order to obtain a favorable plea agreement from the State. Cowan cross-examined the witnesses regarding all other forged checks passed by Bowles and Harkness and even introduced those other checks at trial. Therefore, it is apparent that Cowan actually emphasized this evidence and he, therefore, has failed to show that this evidence was unduly prejudicial.

## II. Jury Instruction—Accomplice Liability

Cowan next argues that the trial court improperly instructed the jury on accomplice liability. Specifically, Cowan asserts that the instruction was erroneous because the evidence did not support the giving of such an instruction and it was confusing to the jury. Appellant's Br. p. 18.

In resolving this issue, this court reviews the grant of a jury instruction for an abuse of discretion. *See Benefiel v. State,* 716 N.E.2d 906, 914 (Ind. 1999). The purpose of the instructions is to inform the jury of the law applicable to the facts of the particular case. *Simmons v. State,* 717 N.E.2d 635 (Ind.Ct.App.1999). An improper instruction will merit reversal only if it "so affects the entire charge that the jury was misled as to the law in the case." *White v. State,* 547 N.E.2d 831, 835 (Ind.1989). Additionally, in reviewing a challenge to a jury instruction, "this Court considers whether the instruction correctly states the law, whether there was evidence in the record to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions." *Sherwood v. State,* 702 N.E.2d 694, 698 (Ind.1998).

In the instant case, the trial court gave the following instruction over Cowan's objection:

Aiding, inducing, or causing and (sic) offense is defined by statute as follows: A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person has not been prosecuted for the offense, has not been convicted of the offense, or has been acquitted of the offense.

Furthermore, a Defendant may be charged as a principal and convicted on evidence that he aided in the commission of the crime.

Mere presence at the scene of the crime is not sufficient to allow an inference of participation.

Appellant's App. p. 121.

In addressing the propriety of the above instruction in these circumstances, we note that under the theory of accomplice liability, an individual who aids, induces, or causes the commission of a crime is equally as culpable as the person who actually commits the offense. Ind. Code § 35–41–2–4. The accomplice liability statute does not set forth a separate crime, but merely provides a separate basis of liability for the crime that is charged. *Hampton v. State,* 719 N.E.2d 803, 807 (Ind.1999). Therefore, where the circumstances of the case raise a reasonable inference that the defendant acted as an accomplice, it is appropriate to instruct the jury on accomplice liability even where the defendant was charged as a principal. *Id.*

Notwithstanding Cowan's argument that the above "instruction is another example of the State's efforts to hold Appellant accountable for crimes he did not commit," the evidence established that Cowan urged Bowles to use stolen checks to obtain merchandise in exchange for drugs. Tr. p. 180–81, 262–63, 271–72. Moreover, it is undisputed that Cowan and Bowles went to the Finish Line together. Tr. p. 206, 292–95, 312–17. Cowan tried on the shoes, placed them on the counter and left the store while Bowles completed the transaction. The evidence established that Cowan knew that Bowles would be using a forged check to acquire the merchandise. Tr. p. 207, 210, 296–98, 318–19. This was enough to show that Cowan aided and induced Bowles in receiving, retaining, or disposing of the shoes. To be sure, it is apparent that Cowan and Bowles acted together in receiving and retaining the

merchandise that had been acquired from the Finish Line. Therefore, the evidence supported the instruction on accomplice liability and Cowan has failed to show how that instruction was confusing. Thus, there was no error with respect to this issue.

### III. Prosecutorial Misconduct

■■■ Cowan next claims that his conviction must be set aside because the prosecutor committed misconduct during closing arguments. Specifically, Cowan asserts that the prosecutor improperly commented on her own personal integrity, linked her integrity to the credibility of the State's chief witnesses and blamed Cowan for all the offenses that were committed by other individuals who had testified at the trial.

■■■ In addressing this argument, we initially observe that when faced with an allegation of prosecutorial misconduct, a defendant is required to object and request an admonishment. *Reid v. State,* 719 N.E.2d 451, 458 (Ind.Ct.App.1999). If, after an admonishment, the defendant is still not satisfied, the proper procedure is to move for a mistrial. *Id.* The failure to request an admonishment or move for a mistrial results in a waiver of the issue. *Id.*

■■■ In the instant case, while Cowan lodged no objection to the State's closing argument, he attempts to avoid waiver by arguing that the prosecutor's comments amounted to fundamental error. This court has held that in some instances, prosecutorial misconduct may amount to fundamental error. *Prewitt v. State,* 761 N.E.2d 862, 871 (Ind.Ct.App.2002). For such misconduct to rise to the level of fundamental error, however, it must have been so prejudicial to the rights of the defendant as to make a fair trial impossible. *Id.* In determining whether an alleged error rendered a judicial proceeding

unfair, this court must consider whether the resulting harm or potential for harm is substantial. *Myers v. State,* 718 N.E.2d 783, 790 (Ind.Ct.App.1999), *trans. denied.* A review of the totality of the circumstances and a determination whether the error had a substantial influence upon the outcome are required. *Id.*

Here, the prosecutor stated during her closing argument that the testimony of Bowles and Harkness should be considered credible even though it was not absolutely identical. Such a statement was apparently made in anticipation of an argument by Cowan that their testimony should not be believed because some of their statements were contradictory. Thereafter, the prosecutor stated that she did not encourage people to lie on the stand and that she was not paid by the conviction. Those statements were made in response to Cowan's closing argument where he argued that even though Bowles' and Harkness' plea agreements required them to testify truthfully, it was the prosecutor who determined what the truth was and that had they not testified that Cowan was involved they would have gone to jail. Tr. p. 385.

■■■ Cowan correctly points out that it is improper for a prosecutor to personally vouch for a witness in an argument. *See Bouye v. State,* 699 N.E.2d 620, 623 (Ind. 1998). It is apparent here, however, that the prosecutor did not personally vouch for Bowles and Harkness. Rather, she made the general statement that she did not encourage anyone to lie on the stand and merely emphasized that she had no personal interest at stake in the trial. Asserting that one did not encourage someone to lie is not the same as asserting that the person is not lying. *See id.* (finding that a prosecutor did not personally vouch for a witness when, in response to the defendant's argument, the prosecutor stated

that he would not ask any witness to lie). Moreover, the jury was instructed that the arguments of counsel were not evidence, and that the jurors themselves were the exclusive judges of witness credibility. Appellant's App. p. 70, 73, 113, 117. Thus, Cowan has failed to demonstrate that the prosecutor's comments amounted to misconduct—much less fundamental error.

### IV. Sufficiency of the Evidence

█ As a final issue, Cowan contends that the evidence was insufficient to support his conviction. Specifically, he maintains that the evidence merely established his presence at the scene of the crime, and the State failed to show that he knowingly or intentionally received property that was owned by the Finish Line.

█ Our standard of review for sufficiency claims is well-settled. We will not reweigh the evidence or assess the credibility of the witnesses. *Smith v. State*, 725 N.E.2d 160, 161 (Ind.Ct.App.2000). We consider only the evidence most favorable to the judgment, together with all reasonable inferences that can be drawn therefrom. *Alspach v. State*, 755 N.E.2d 209, 210 (Ind.Ct.App.2001), *trans. denied.* If a reasonable trier of fact could have found the defendant guilty based on the probative evidence and reasonable inferences drawn therefrom, the conviction will be affirmed. *Smith*, 725 N.E.2d at 161. Moreover, it is the jury's responsibility to weigh the evidence and decide what to believe and what not to believe. *Cohen v. State*, 714 N.E.2d 1168, 1179 (Ind.Ct.App. 1999), *trans. denied.* Moreover, inconsistent statements made by a witness at trial will not render his trial testimony inherently dubious. *Newsome v. State*, 686 N.E.2d 868, 875 (Ind.Ct.App.1997).

To convict Cowan of the offense charged, the State was required to prove beyond a reasonable doubt that he (1) knowingly or intentionally; (2) received, retained or disposed of property owned by the Finish Line; and (3) that the property had been the subject of theft. Ind.Code § 35–43–4–2(b).

Here, Bowles and Harkness testified that Cowan suggested that they steal and use checkbooks and credit cards to obtain merchandise for him in exchange for drugs. Tr. p. 180–81, 262–63, 271–72. After taking Graham's checkbook, the women drove to Marsh, cashed a forged check and returned to Cowan's and gave him money. Cowan and Hays then gave them a list of items they wanted for their apartment. Bowles and Harkness then acknowledged that they went to Wal–Mart and purchased items from the list that Cowan had supplied, again paying for them with a forged check.

Bowles testified that she and Cowan went to a Bedford sporting goods store the next day where she bought merchandise using another forged check. Bowles then recounted the incident where she and Cowan went to the Finish Line. Cowan tried on the shoes and Bowles paid for them with a forged stolen check while Cowan waited for her outside the store. Bowles also admitted that when the police stopped them, Cowan assisted her in hiding the stolen checkbook under the table where the police later discovered it.

The police officers observed Cowan and Bowles in the Finish Line, while Cowan was trying on the shoes. Tr. p. 296–98. One of the Officers saw Cowan place the shoes on the counter and leave the store. Tr. p. 297–98, 318–19. After paying for the shoes with a forged check, Bowles exited the store and began walking toward Cowan. After the arrest, Bowles admitted to the police that she had forged the check, that Cowan knew it, and that she had "purchased" a lot of the merchandise for

him at his request. Tr. p. 322. In light of this evidence, Cowan's conviction for receiving stolen property may stand.

### CONCLUSION

In conclusion, we note that the trial court did not err in admitting evidence of uncharged criminal offenses or prior bad acts which were intrinsic to the charged offenses. Additionally, it was proper to give a final instruction on accomplice liability, and the State did not commit prosecutorial misconduct. Finally, we conclude that the evidence was sufficient to support Cowan's conviction.

Judgment affirmed.

RILEY and MATHIAS, JJ., concur.