

FILED

May 12 2016, 9:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian Alexander Thomas McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Philip D. Kyle,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 12, 2016<br><br>Court of Appeals Case No.<br>20A03-1507-CR-969<br><br>Appeal from the Elkhart Superior<br>Court<br><br>The Honorable Teresa L. Cataldo,<br>Judge<br><br>Trial Court Cause No.<br>20D03-1107-FC-11 |

**Pyle, Judge.**

# Statement of the Case

Philip D. Kyle ("Kyle") appeals his two convictions for Class C felony child molesting.[1] On appeal, he argues that the trial court abused its discretion when it: (1) admitted an audiotape of phone conversations he had with the victim's mother from jail; and (2) allowed the victim's mother to testify that she was convicted of assisting a criminal as a result of trying to convince the victim to change his story. He asserts that the phone conversations were inadmissible under Indiana Evidence Rule 404(b) and that the testimony was inadmissible under Evidence Rule 704(b). However, we conclude that the trial court did not abuse its discretion because the phone calls and the victim's mother's testimony concerned conduct inseparable from Kyle's offense, and their highly probative nature outweighed the risk of unfair prejudice to Kyle.

We affirm.

# Issue

Whether the trial court abused its discretion in admitting evidence.

# Facts

Shellie Peyton ("Peyton") started dating Kyle, whom she had known in high school thirty years previously, in August 2010. Peyton lived in Goshen,

---

[1] IND. CODE § 35-42-4-3(b). Effective July 1, 2014 and 2015, the Indiana General Assembly amended the child molesting statute, and Kyle's offenses would now be considered Level 4 felonies. However, we will apply the statute in effect at the time of Kyle's offenses.

Indiana with her four children—seventeen-year-old So.P., sixteen-year-old P.P., thirteen-year-old Su.P., and eight-year-old N.P—and two of So.P.'s friends. Eventually, Kyle began staying with the Peyton family four to five nights a week and would share a bedroom with Peyton and N.P.

[4] On three or four occasions between the fall of 2010 and the spring of 2011, Kyle touched N.P. inappropriately when they were alone together in Peyton and N.P.'s room. Each time, Kyle reached under N.P.'s clothing and "rubbed" N.P.'s penis "[u]p and down." (Tr. 315, 319). Kyle told N.P. not to tell anyone. Eventually, however, N.P. told his mother, who filed a report with the police.

[5] On July 6, 2011, the State charged Kyle with two counts of Class C felony child molesting. After Kyle's arrest, Peyton maintained contact with him while he was incarcerated. She visited him in jail and talked to him on the telephone at least twice. During Kyle's conversations with Peyton, he denied molesting N.P. and told her that she needed to convince N.P. to change his story. Peyton then talked to N.P. about changing his story, and she called the Child and Family Advocacy Center, who had conducted a forensic interview of N.P., and requested that the center re-interview him. She also called the police and told them that N.P. wanted to come in and make another statement. As a result of these actions, Peyton was charged with, and convicted of, assisting a criminal, for which she was sentenced to forty-five days.

[6]     On March 16, 2015, the State filed a motion of its intent to offer Indiana Evidence Rule 404(b) evidence at Kyle's trial. Specifically, it intended to offer audiotaped copies of Kyle's telephone conversations with Peyton while he was in jail, as well as evidence of Peyton's conviction for assisting a criminal—and the actions that had led to that conviction. Kyle filed an objection to the State's motion, arguing that the notice was untimely and requesting that the trial court either deny the motion or continue the trial so that he could have time to prepare his defense. The trial court held a hearing on the motion. At the conclusion of the hearing, the court denied Kyle's objection to the timeliness of the State's motion but granted Kyle's motion to continue the trial.

[7]     Subsequently, the trial court held a jury trial on June 1-3, 2015. At trial, the State admitted an audiotape with three excerpts of Kyle and Peyton's jail phone calls and played the excerpts for the jury. Kyle objected to the admission of another of the audiotaped conversations but did not object to the admission of these three excerpts. In the first excerpt, he and Peyton had the following conversation:

> [Kyle:]  Very, very much.  You make me happy.
>
> [Peyton]:  I love you, too.
>
> [Kyle:]  But you love me.  Go get that stuff done, see what you can do at your end about getting N.P. to talk to that [sic] people—
>
> [Peyton:]  Okay.  Okay.
>
> [Kyle:]  Because it's, it's like that, it's going to take that to get me out of here.

(Tr. 208). In the second excerpt, they had the following conversation:

> [Kyle:] You just get N.P. to tell the damn truth and get this straightened out through the Child Services and through this prosecutor, you know. Call that—
>
> [Peyton:] Yes.
>
> [Kyle:] Because Jolina has got a couple of letters back there, get her.
>
> [Peyton:] It's Hinda?
>
> [Kyle:] Yes, it's Hinda. She can help with the letters I sent her on this.

(Tr. 208-09). In the third excerpt, the two said:

> [Kyle:] Get yourself around tomorrow and get N.P. around get on the fall over there, get over there to tell sources or something, do what you got to do.
>
> [Peyton:] Yeah. A [] Child Advocate.
>
> [Kyle:] Okay. Child Advocate.
>
> [Peyton:] Service, yeah.
>
> [Kyle:] You know the boss will get this started, the sooner the better, you know what I mean?
>
> [Peyton:] Yeah. Okay.
>
> [Kyle:] They can get with the prosecutor. By the time I get—
>
> [Peyton:] --
>
> [Kyle:] Huh?
>
> [Peyton:] It's, it's supposed to rain and thunder and stuff tomorrow anyway, so maybe we have nothing else to do.

[Kyle:] Right. That way, you know, they can get with the prosecutor and let the prosecutor know that, that you've notified them and you're letting—

[Peyton:] Yeah.

[Kyle:] N.P. told a lie.

[Peyton:] Yes.

[Kyle:] And this is a bull shit charge.

[Peyton:] Yeah.

[Kyle:] The prosecutor should know that this is a bull shit charge.

[Peyton:] Yeah.

[Kyle:] Yeah, okay.

[Kyle:] Well, I'm going to quit talking to you again before this damn phone went did [sic]. You know what I mean?

[Peyton:] (laughing) I know. I hate it when we're talking on the screen around here, and it just fuckin dies out.

[Kyle:] Yeah. It goes white. Well, (indiscernible) you got to tell me you love me this time.

[Peyton:] Yeah.

[Kyle:] Last time you didn't so. I heard you told me you loved me. That really helped.

(Tr. 210) (incorrect grammar and misspellings in original).

[8]    After the State played these audiotaped conversations for the jury, Peyton testified that she had called the Child and Family Advocacy Center after talking to Kyle and that she had asked the center to re-interview N.P. She also testified

that, as a result of these actions, she had been charged with, and convicted of, assisting a criminal. Kyle did not object to this testimony.

[9] At the conclusion of the trial, the jury found Kyle guilty as charged. The trial court later sentenced him to five (5) years for the first count, with one (1) year suspended to probation, and five (5) years for the second count, with all five (5) years suspended to probation. The court ordered the sentences to be served consecutively, for an aggregate sentence of ten (10) years with four (4) years executed in the Indiana Department of Correction and six (6) years suspended to probation. Kyle now appeals.

## Decision

[10] On appeal, Kyle argues that the trial court abused its discretion by admitting his audiotaped jail phone calls and Peyton's testimony that she had been convicted of assisting a criminal. We will address each argument in turn.

[11] The admission and exclusion of evidence falls within the sound discretion of the trial court. *Guffey v. State*, 42 N.E.3d 152, 159 (Ind. Ct. App. 2015), *trans. denied.* As a result, we review the admission of evidence only for an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.*

[12] First, Kyle argues that the jail phone call excerpts that the State played for the jury were inadmissible under Indiana Evidence Rule 404(b) because they "encourage[d] the jury to make the forbidden inference . . . that Kyle was already a 'criminal' and [] had a propensity to commit this crime." (Kyle's Br.

7).  However, Kyle did not object to the excerpts that the trial court admitted and the State published to the jury.

[13]     A trial counsel's failure to object to the admission of evidence waives an error for appellate review.  *Johnson v. State*, 725 N.E.2d 864, 867 (Ind. 2000).  Here, Kyle not only failed to object but affirmatively denied that he had an objection.  Before Peyton testified, the trial court held a conference outside of the jury's presence on the issue of the phone calls.  The State told the court that there were two jail phone calls comprising a total of thirty minutes but that it only intended to play a portion of the first phone call and short excerpts from the second call.  Kyle objected to the State admitting the excerpt of the first phone call in which Peyton, while talking to Kyle, said:  "Well, N.P. said, 'Even though [Kyle] did do it, can you go tell them that he didn't do it?'"  (Tr. 180).  Kyle argued that this was a prior consistent statement that bolstered N.P.'s credibility before N.P. testified.  In response, the State agreed to introduce only the three excerpts from the second jail phone call.  The court asked Kyle whether he had any objection to "playing the second part of that tape?" and Kyle responded "No, your Honor."  (Tr. 186).

[14]     Later during Peyton's testimony, before the State played the three excerpts from the second phone call to the jury, the court held a bench conference.  During this conference, the State reaffirmed:  "Yeah.  I'm only planning on playing the second jail phone call, the parts that—those three things that I have previously stated."  (Tr. 204).  Kyle responded, "That would be fine[.]"  (Tr. 205).  Subsequently, the trial court questioned Kyle again, asking:  "You are saying

you have no objection to admitting the three snippets from this call?" (Tr. 205). Kyle responded: "I have no objection to the three snippets. The other I still maintain my objection to." (Tr. 205).

[15] In light of these exchanges, it is clear that Kyle did not object to the admission of the three excerpts of the second jail phone call that the State published to the jury. He maintained his objection to the first jail phone call, which the court did not admit, but not to the excerpts from the second phone call. Accordingly, we conclude that Kyle has waived his challenge to the audio excerpts by failing to object to their admission at trial. *See Johnson,* 725 N.E.2d at 867 (Ind. 2000) (stating that a trial counsel's failure to object to the admission of evidence waives an error for appellate review).

[16] Waiver notwithstanding, we are not persuaded by Kyle's Evidence Rule 404(b) argument. As stated above, Kyle asserts that the jail phone calls were inadmissible because they were offered to show his criminal propensity, which Rule 404(b) prohibits. While Rule 404(b) provides that prior actions may be admissible for purposes other than to show criminal propensity, such as motive or intent, Kyle notes that the State never articulated a Rule 404(b) exception that applied to the phone calls. However, we conclude that the phone calls were admissible under Rule 404(b) because the conversations were not "prior" acts; they were intrinsic to Kyle's charged offenses.

[17] Indiana Evidence Rule 404(b) provides that:

> Evidence of other crimes, wrongs, or acts, is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial.

The rationale behind Rule 404(b) is that the jury is precluded from making the forbidden inference that the defendant had a criminal propensity and therefore engaged in the charged conduct. *Cowan v. State*, 783 N.E.2d 1270, 1275 (Ind. Ct. App. 2003). However, our supreme court has determined that Rule 404(b) does not bar the admission of evidence of uncharged criminal acts that are "intrinsic" to the charged offense. *Lee v. State*, 689 N.E.2d 435, 439 (Ind. 1997). "Intrinsic," in this context, refers to those offenses occurring at the same time and under the same circumstances as the crimes charged. *Cowan*, 783 N.E.2d at 1275; *cf. United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir. 1995) ("When the other crimes or wrongs occurred at different times and under different circumstances from the offense charged, the deeds are termed 'extrinsic.'") Evidence of such conduct is admissible because it does not concern "other" crimes, wrongs, or acts, and it is not offered for the purpose of creating an inference as to the accused's character or propensity. *See* Evid. R. 404(b); *Lee*, 689 N.E.2d at 439; *Weyls v. State*, 598 N.E.2d 610, 613-14 (Ind. Ct. App. 1992), *trans. denied.* Notably, acts by persons other than the defendant may be relevant and admissible as intrinsic acts. *Blankenship v. State*, 462 N.E.2d 1311, 1313

(Ind. 1984). Also, admissibility of all intrinsic evidence depends solely on the balance between the probative value of the evidence and the risk of unfair prejudice. *See Ware v. State*, 816 N.E.2d 1167, 1175 (Ind. Ct. App. 2004).

[18] Here, the audiotaped jail phone conversations admitted at trial were evidence of conduct that was intrinsic to Kyle's offense—his attempts to get Peyton to convince N.P. to change his story. These actions were inseparable from Kyle's charged offense as he was attempting to cover up N.P.'s disclosure of molestation, which was the primary evidence that he had committed the offense. The evidence did not concern any of Kyle's "other" wrongdoings and was not offered as evidence of his character or propensity. Thus, the evidence was admissible under Rule 404(b).

[19] Nevertheless, we must balance whether the probative value of the evidence outweighed the risk that its admission would cause unfair prejudice to Kyle. *See id.* Simply put, evidence is "probative" if it is "relevant." *Shane v. State*, 716 N.E.2d 391, 398 (Ind. 1999). In turn, evidence is considered "relevant" under Evidence Rule 401 if: "(a) it has *any* tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." (emphasis added). The determination of whether there is a risk of unfair prejudice depends on "'the capacity of the evidence to persuade by illegitimate means, or the tendency of the evidence to suggest decision on an improper basis.'" *Camm v. State*, 908 N.E.2d 215, 224 (Ind. 2009) (quoting *Ingram v. State*, 715 N.E.2d 405, 407 (Ind. 1999)).

[20] We have previously noted that evidence of a defendant's attempts to "cover up" his offense are probative of guilt. *See Scifres-Martin v. State*, 635 N.E.2d 218, 220 (Ind. Ct. App. 1994) ("The manufacture, destruction, or suppression of evidence may be properly considered by the jury as an admission of the defendant's guilt or his guilty knowledge.") Here, that evidence was highly probative as the conversations directly linked Kyle to his attempted cover up. The jury was entitled to hear this highly probative evidence of his attempts to tamper with a child witness's testimony. Accordingly, we conclude that the probative nature of the evidence outweighed its risk of unfair prejudice.

[21] Next, Kyle argues that the trial court abused its discretion by admitting Peyton's testimony that she was convicted of assisting a criminal. He asserts that this testimony amounted to improper, indirect vouching for N.P.'s credibility that was prohibited by Indiana Evidence Rule 704(b) because it implied that Kyle had already been adjudicated a "criminal." (Kyle's Br. 8).

[22] First, we must note that, as above, Kyle did not object to this testimony at trial and therefore waived his claim. *See Allen v. State*, 686 N.E.2d 760, 775 (Ind. 1997) (holding that failure to object to testimony at trial waives any claim of error and allows otherwise inadmissible hearsay evidence to be considered for substantive purposes and to establish a material fact at issue), *reh'g denied*, *cert. denied.* Waiver notwithstanding, we also noted above that acts by persons other than the defendant may be relevant and admissible as intrinsic acts. *Blankenship,* 462 N.E.2d at 1313. For the same reasons that we concluded the jail phone conversations were admissible, we conclude that Peyton's conviction

for her attempts to tamper with N.P.'s story was admissible. The jail phone call excerpts that the State introduced demonstrated that Kyle had directed the actions that led to Peyton's conviction, and the jury was entitled to hear this probative evidence that Peyton had followed through with Kyle's instructions to cover up his crime. Her actions were inseparable from Kyle's offense. Accordingly, we conclude that the trial court did not abuse its discretion in admitting either the jail phone calls or Peyton's testimony that she was convicted of assisting a criminal.

[23]  Affirmed.

Kirsch, J., and Riley, J., concur.