## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 11 2017, 5:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alan K. Wilson
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jason C. Amonett,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 11, 2017<br><br>Court of Appeals Case No.<br>18A04-1609-CR-2126<br><br>Appeal from the Delaware Circuit Court<br><br>The Honorable Linda Ralu Wolf, Judge<br><br>Trial Court Cause No.<br>18C03-1205-FA-9 |

**Barnes, Judge.**

# Case Summary

Jason Amonett appeals his convictions and sentence for Class A felony dealing in a schedule II controlled substance within 1,000 feet of a youth program center, Class C felony possession of a controlled substance, and Class A misdemeanor possession of paraphernalia. We affirm.

# Issues

Amonett raises three issues, which we restate as:

I.      whether the trial court properly admitted evidence of marijuana and oxycodone found during a search of Amonett's house;

II.     whether the trial court properly admitted Amonett's statement to police; and

III.    whether the forty-year sentence is inappropriate.

# Facts

On May 1, 2012, Officer Michael Nickens with the Muncie Police Department arranged for a confidential informant to participate in a controlled drug buy at Amonett's residence. The confidential informant was given buy money, which had been photographed, and was fitted with audio/video recording equipment. At Amonett's residence, the confidential informant used buy money to purchase morphine. The next day, the same confidential informant again participated in a controlled drug buy at Amonett's residence. The confidential informant again used buy money to purchase morphine.

[4] Two hours after the last controlled buy, the police executed a search warrant for Amonett's residence. Amonett and Sarah Lipscomb were taken into custody. Money from the second controlled buy was recovered from the residence along with significant amounts of morphine, some marijuana, four oxycodone pills, and paraphernalia. Amonett waived his *Miranda* rights and was interviewed by officers. Amonett admitted that he had been dealing pills out of his residence since December 2011 and that he could be making $30,000 per month if he and Lipscomb were not also using the pills.

[5] The State charged Amonett with: Count I, Class A felony dealing in a schedule II controlled substance within 1,000 feet of a youth program center for Amonett's actions on May 1; Count II, Class A felony dealing in a schedule II controlled substance within 1,000 feet of a youth program center for Amonett's actions on May 2; Count III, Class C felony possession of a controlled substance (Opana); Count IV, Class C felony possession of a controlled substance (morphine); and Count V, Class A misdemeanor possession of paraphernalia. The State later moved to dismiss Count III, which the trial court granted. At Amonett's jury trial, the trial court admitted both the marijuana and the oxycodone that were found in Amonett's house even though he was not charged with possession of either substance. The trial court also admitted the recording of Amonett's statement to the officers. The jury was unable to reach a verdict on Count I but found Amonett guilty as charged of Counts II, IV, and V. The trial court sentenced Amonett to forty years for Count II, six years for

Count IV, and one year for Count V to be served concurrently for an aggregate sentence of forty years. Amonett now appeals.

# Analysis

## *I. Admission of Marijuana and Oxycodone*

[6] Amonett argues that the trial court erred by admitting the marijuana and oxycodone that were found in his residence. Amonett points out that none of his charges related to the marijuana or oxycodone, and he argues that the admission of the evidence violated Indiana Evidence Rule 404(b).

[7] Amonett, however, failed to object on the grounds of Evidence Rule 404(b). When the items were offered as evidence, Amonett's only objection was that the marijuana and oxycodone were "irrelevant to this proceeding." Tr. Vol. I p. 242. Where a defendant fails to object to the introduction of evidence, makes only a general objection, or objects only on other grounds, he waives the claim. *Moore v. State*, 669 N.E.2d 733, 742 (Ind. 1996).

[8] Waiver notwithstanding, the trial court has broad discretion to rule on the admissibility of evidence. *Guilmette v. State*, 14 N.E.3d 38, 40 (Ind. 2014). We review its rulings for abuse of that discretion. *Id.* We will reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id.*; Ind. Trial Rule 61. The improper admission of evidence is harmless if there is substantial independent evidence of guilt. *Davis v. State*, 907 N.E.2d 1043, 1056 (Ind. Ct. App. 2009).

Here, even if the trial court abused its discretion by admitting the marijuana and oxycodone found at Amonett's residence during the search, any error was harmless. During an audio/video recorded controlled buy, Amonett sold morphine to a confidential informant. When Amonett's residence was searched pursuant to the search warrant, police found substantial amounts of morphine and the money from the second controlled buy. The evidence regarding Amonett's dealing of morphine was overwhelming. Because there was substantial independent evidence of Amonett's guilt, any error in the admission of the marijuana and oxycodone was harmless.

## II. Amonett's Statement to Police

Next, Amonett argues that the trial court abused its discretion by admitting the statement that he made to police. We review the trial court's rulings on the admissibility of evidence for abuse of discretion. *Guilmette*, 14 N.E.3d at 40. We will reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. *Id.*; T.R. 61. The improper admission of evidence is harmless if there is substantial independent evidence of guilt. *Davis*, 907 N.E.2d at 1056.

According to Amonett, the statement contained evidence of prior dealing activity rather than evidence of the May 1st or May 2nd allegations, and the statement was inadmissible under Indiana Evidence Rule 404(b). Amonett argues that the evidence was "extraordinarily prejudicial and could hardly have helped but turn the jurors' attitudes against" him. Appellant's Br. p. 10. Prior to trial, Amonett filed a motion to suppress the statement pursuant to Indiana

Evidence Rule 404(b), which the trial court denied. At the trial, Amonett objected to the admission of the statement "for the reasons stated" in the motion to suppress, but the trial court overruled the objection. Tr. Vol. II p. 12.

[12] The State argues, in part, that the statement was "related to an ongoing drug dealing operation that was the subject of the instant investigation and not prior unrelated conduct." Appellee's Br. p. 21. The State contends that the statement was "inextricably intertwined with the crimes charged." *Id.* at 22. The State had alleged that Amonett was dealing morphine from his residence on May 1st and May 2nd. In the statement to police, Amonett admitted that he had been dealing morphine out of his residence since December 2011 and that he could be making $30,000 per month if he and Lipscomb were not also using the pills. Rule 404(b) does not bar evidence of uncharged criminal acts that are "intrinsic" to the charged offense. *Kyle v. State*, 54 N.E.3d 439, 444 (Ind. Ct. App. 2016). "Intrinsic" means "those offenses occurring at the same time and under the same circumstances as the crimes charged." *Id.* "Evidence of such conduct is admissible because it does not concern 'other' crimes, wrongs, or acts, and it is not offered for the purpose of creating an inference as to the accused's character or propensity." *Id.* Evidence of Amonett dealing morphine from his residence was part of the charged crime. The evidence did not concern Amonett's "other" wrongdoings and was not offered as evidence of his character or propensity to commit the crime. We conclude that the trial court did not abuse its discretion by admitting the statement.

Moreover, even if the trial court abused its discretion by admitting the statement, we conclude that any error was harmless. For the same reasons we discussed regarding the admission of the marijuana and oxycodone, the evidence regarding Amonett's dealing of morphine was overwhelming. Because there was substantial independent evidence of Amonett's guilt, any error in the admission of the statement was harmless.

### III. Inappropriate Sentence

Amonett argues that his forty-year sentence is inappropriate under Indiana Appellate Rule 7(B). Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offenses and the character of the offender. When considering whether a sentence is inappropriate, we need not be "extremely" deferential to a trial court's sentencing decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). Still, we must give due consideration to that decision. *Id.* We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind.

2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

[16] Amonett makes no specific argument regarding the nature of his offenses or his character. Rather, the focus of Amonett's argument is that, if he had been sentenced under the revised criminal code, which went into effect on July 1, 2014, his maximum sentence would have been two and one-half years. Under the criminal code in effect at the time of the offense, the maximum sentence for Amonett's offense was fifty years with an advisory sentence of thirty years. *See* Ind. Code § 35-50-2-4. Amonett concedes that the doctrine of amelioration does not apply here, but he requests that we revise his sentence to twenty years. We have previously rejected this argument. *See Marley v. State*, 17 N.E.3d 335, 340 (Ind. Ct. App. 2014) (declining to take into consideration the lesser penalties of the new criminal code in addressing the appropriateness of the defendant's sentence), *trans. denied*; *Schaadt v. State*, 30 N.E.3d 1, 4 (Ind. Ct. App. 2015) (declining to reduce the defendant's forty-year sentence based on a consideration of the lesser penalties of the new criminal code), *trans. denied*. Rather, we must review Amonett's sentence based solely on the nature of the offense and the character of the offender.

[17] The nature of the offense is that Amonett sold morphine to a confidential informant from his residence. When police searched the residence, they found more than one hundred and fifty morphine pills and paraphernalia. Amonett admitted that he had been selling morphine out of his residence since December 2011 and that he could have been making $30,000 per month if he and Lipscomb had not been using the pills too.

[18] As for the character of the offender, at the time of the offense, Amonett was thirty-eight years old. He had accumulated a significant criminal history, including a 1994 conviction for minor consumption of alcohol, a 1994 conviction for Class A misdemeanor conversion, a 1995 conviction for driving while suspended, a 1996 conviction for driving while suspended, a 1997 conviction for visiting a common nuisance, a 1997 conviction for criminal conversion, a 1998 conviction for driving while suspended, a 2000 conviction for Class D felony receiving stolen property, 2001 convictions for two counts of Class D felony theft, a 2003 conviction for driving while suspended, 2005 convictions for Class C felony forgery, Class D felony resisting law enforcement, and Class D felony receiving stolen property, a 2015 conviction for Class D felony theft, and a 2015 conviction for criminal conversion.

[19] The trial court acknowledged that Amonett was remorseful, had strong family support, and suffered from significant health conditions. However, the trial court also noted that Amonett had not taken advantage of substance abuse treatment offered to him and that prior attempts at rehabilitation had been unsuccessful. Given Amonett's significant criminal history and the ongoing

morphine dealing operation that he was running out of his residence, we cannot say that the forty-year sentence imposed by the trial court is inappropriate.

## Conclusion

[20] Any error in the admission of the marijuana, oxycodone, or Amonett's statement to police was harmless. The forty-year sentence imposed by the trial court is not inappropriate in light of the nature of the offense and the character of the offender. We affirm.

[21] Affirmed.

Kirsch, J., and Robb, J., concur.