## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 16 2017, 11:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen F. Hurley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Anthony Hudgins,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 16, 2017

Court of Appeals Case No.
49A02-1612-CR-2760

Appeal from the Marion Superior Court

The Honorable Barbara Crawford, Judge

Trial Court Cause No.
49G09-1605-F6-20325

**Crone, Judge.**

# Case Summary

[1] Anthony Hudgins appeals his conviction, following a jury trial, for level 6 felony strangulation. He asserts that the trial court abused its discretion in admitting evidence of uncharged acts of misconduct by him. Finding no abuse of discretion, we affirm.

# Facts and Procedural History

[2] At around 9:00 p.m. on May 2, 2016, Savonna Sloan drove to her grandmother's house to pick up some tuition money for college. When she arrived at the house, there was a trash can in the available parking space, so she exited her car to move the trash can. Sloan was on the phone with her boyfriend at the time and was annoyed that she had to move the trash can. Hudgins, her uncle, was sitting on the porch of the house and asked Sloan what she was doing. She explained to Hudgins that she needed to move the trash can, and then she returned to her car.

[3] As Sloan parked her car, Hudgins "stormed" down the driveway and "began to bang" on the driver's-side window of Sloan's car. Tr. at 54. Sloan rolled down her window, and Hudgins repeatedly yelled at her that she was "being disrespectful, very disrespectful." *Id*. He also started pulling on the door "as if he was trying to snatch the door open." *Id*. Sloan exited the car and started to quickly walk up the driveway. Hudgins followed her and then started "point[ing] his finger in [her] face and he kept directing [her] to leave" because she was being "disrespectful." *Id*. at 56. When Sloan attempted to go around

Hudgins, he pushed her and began to choke her by clasping his hands around her neck until she was unable to breathe. Sloan tried to fight off Hudgins, but he continued to choke her and pull her by the hair.

[4] Hudgins choked Sloan for approximately thirty seconds. During that time, he also pulled out one of her braided hair extensions and slapped her face, causing her glasses to fall off. Sloan responded by slapping Hudgins. Hudgins then pushed Sloan against the neighbor's fence. Sloan managed to get to the front door of her grandmother's house as Hudgins continued to hold her by the neck and hair. She banged on the door with her foot and screamed, "[H]elp, grandma please help." *Id.* at 60. When Sloan's cousin, Danny, opened the door, Hudgins released his grasp on Sloan's hair, and Sloan ran past Danny into the house. Sloan held her throat, struggled to breathe, and gagged. She cried and exclaimed to Danny that Hudgins "tried to choke me out." *Id.* at 82. Sloan reached the bedroom where her mother and grandmother were, and vomited on the rug and then again in the wastebasket. Sloan's grandmother went to speak to Hudgins, and he exclaimed, "[T]hat bitch hit me. That bitch hit me. She was being disrespectful." *Id.* at 61-62. Hudgins later admitted to Danny that he tried to block Sloan from coming into the house and that he had grabbed and choked her. The next morning, Sloan called the police and reported the attack.

[5] The State charged Hudgins with level 6 felony strangulation. Prior to trial, Hudgins filed a motion in limine to prohibit the State from "mentioning any and all acts, other than those specifically mentioned in the charging information

in the above-captioned matter." Appellant's App. Vol. 2 at 53. The court took the matter under advisement until trial. Prior to the start of trial, Hudgins argued that the State should not be allowed to introduce evidence regarding his uncharged acts of battery against Sloan, specifically that he pulled her hair and slapped her face. The State countered that the evidence was admissible because the uncharged acts were part of a continuing act and occurred at the same time as the strangulation. The trial court denied the motion in limine and ruled that the evidence was admissible.

[6] During Sloan's trial testimony regarding Hudgins pulling her hair and slapping her face, Hudgins objected to the admissibility of the evidence, and the trial court overruled the objection. Hudgins also objected to the admission of a photograph of the braid that Hudgins had allegedly ripped out of Sloan's hair, and to the admission of the recording of Sloan's 911 call during which she stated that she wished to press charges against Hudgins for "assault and battery" and stated that Hudgins had pulled her hair to the point where one of her braids ripped out. Tr. at 63, 65-66; State's Ex. 4, 5. The trial court overruled the objections.

[7] The jury found Hudgins guilty of level 6 felony strangulation as charged. Following a hearing, the trial court imposed a sentence of 545 days, with 365 days to be served on home detention and 180 days suspended to probation. This appeal ensued.

# Discussion and Decision

Hudgins challenges the trial court's admission of evidence. The appellate court affords the trial court wide discretion in ruling on the admissibility of evidence. *Nicholson v. State*, 963 N.E.2d 1096, 1099 (Ind. 2012). "We review evidentiary decisions for abuse of discretion and reverse only when the decision is clearly against the logic and effect of the facts and circumstances." *Id.*

Hudgins argues that evidence that he pulled Sloan's hair and slapped her face was inadmissible pursuant to Indiana Evidence Rule 404(b)(1), which provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Such evidence may, however, be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident .…" Ind. Evidence Rule 404(b)(2). "The rationale behind Rule 404(b) is that the jury is precluded from making the forbidden inference that the defendant had a criminal propensity and therefore engaged in the charged conduct." *Kyle v. State*, 54 N.E.3d 439, 444 (Ind. Ct. App. 2016).

However, our supreme court has determined that Rule 404(b) does not bar the admission of evidence of uncharged criminal acts that are "intrinsic" to the charged offense. *Lee v. State*, 689 N.E.2d 435, 439 (Ind. 1997). "'Intrinsic,' in this context, refers to those offenses occurring at the same time and under the same circumstances as the crimes charged." *Kyle*, 54 N.E.3d at 444 (quoting

*Cowan v. State*, 783 N.E.2d 1270, 1275 (Ind. Ct. App. 2003)). "By contrast, the paradigm of inadmissible evidence under Rule 404(b) is a crime committed on another day in another place, evidence whose only purpose is to prove the defendant is a person who commits crimes." *Wages v. State*, 863 N.E.2d 408, 411 (Ind. Ct. App. 2007). "Evidence of happenings near in time and place that complete the story of the crime is admissible even if it tends to establish the commission of other crimes not included among those being prosecuted." *Id.* (quoting *Bocko v. State*, 769 N.E.2d 658, 664-65 (Ind. Ct. App. 2002), *trans. denied*).

[11] Here, evidence that Hudgins pulled Sloan's hair and slapped her face during the same confrontation in which he choked and strangled her was intrinsic to the charged offense. Indeed, the evidence completed the story of the crime and explained to the jury Hudgins's motive and intent. Thus, the admission of the evidence was not barred by Rule 404(b).

[12] Still, the admissibility of intrinsic evidence depends on the balance between the probative value of the evidence and the risk of unfair prejudice. *Kyle*, 54 N.E.3d at 444; *see also* Ind. Evidence Rule 403.[1] Evidence is "probative" if it is "relevant," *Shane v. State*, 716 N.E.2d 391, 398 (Ind. 1999), and evidence is "relevant" if it has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining

---

[1] Indiana Evidence Rule 403 permits the trial court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."

the action." Ind. Evidence Rule 401. The risk of unfair prejudice depends on "the capacity of the evidence to persuade by illegitimate means, or the tendency of the evidence to suggest decision on an improper basis." *Camm v. State*, 908 N.E.2d 215, 224 (Ind. 2009). Trial courts are given wide latitude in weighing probative value against prejudicial effect, and that decision is reviewed for an abuse of discretion. *Patton v. State*, 725 N.E.2d 462, 464 (Ind. Ct. App. 2000).

[13] The evidence concerning Hudgins's acts that occurred simultaneously with the strangulation was highly probative and completed the story of the crime of which Hudgins was charged. Other than his erroneous assertion that the evidence was inadmissible pursuant to Rule 404(b) because it tended to suggest his criminal propensity, Hudgins makes no specific argument as to the capacity of the evidence to persuade by illegitimate means or its tendency to suggest a decision on an improper basis, and we discern no such risk. The trial court did not abuse its discretion in admitting the challenged evidence. Therefore, we affirm Hudgins's conviction.

[14] Affirmed.

Baker, J., and Barnes, J., concur.